[Cite as *State v. Dobbins*, 2013-Ohio-3800.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2012CA00203 |
| | : | |
| MICHAEL GLENN DOBBINS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Massillon Municipal
                               Court, Case No. 2012-CRB-01461

JUDGMENT:                      AFFIRMED

DATE OF JUDGMENT ENTRY:        August 26, 2013

APPEARANCES:

For Plaintiff-Appellee:                For Defendant-Appellant:

ROBERT ZEDELL                          MICHAEL THOMPSON
MASSILLON LAW DEPARTMENT                4774 Munson St. NW
Two James Duncan Plaza                 Suite 400
Massillon, Ohio 44646                  Canton, OH 44718

*Delaney, J.*

{¶1} Appellant Michael Glenn Dobbins appeals from the September 11, 2012 and October 9, 2012 judgment entries of the Massillon Municipal Court finding him guilty upon bench trial of one count of domestic violence. Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} At the time of these events, appellant had been married to Rosza Dobbins for six years and the couple had three children together, ages five, three, and one. The family lived at 5753 Oak Drive, Jackson Township, Stark County, Ohio. Mrs. Dobbins is originally from Hungary but is a recently naturalized U.S. citizen who speaks and understands English.

{¶3} On June 5, 2012, Ptl. McDannold of the Jackson Township Police Department reported to the domestic violence shelter in downtown Canton to speak with Mrs. Dobbins in reference to an incident which occurred on May 18, 2012. Mrs. Dobbins described an incident of physical violence and completed a sworn affidavit. A few hours after meeting with officers, Mrs. Dobbins e-mailed photos to the Jackson Township Police Department which she said were related to the incident.

{¶4} Mrs. Dobbins stated around 8:00 p.m. on May 18, 2012, she put her youngest child to bed and the other two children were downstairs with appellant watching television. Mrs. Dobbins went downstairs and found her daughter with appellant on the couch, playing with appellant's iPhone. Mrs. Dobbins grabbed the phone from her daughter. She told police and later testified appellant jumped up and wrestled her down, grabbed her by the arm and sweater, and pushed her to the floor.

{¶5} After the incident, appellant and Mrs. Dobbins both went upstairs and appellant made a call on his phone. Mrs. Dobbins testified appellant started recording her on his phone and called his attorney. He also told her his parents were coming over to the house. She was afraid that if she called the police that evening, she might go to jail and lose her children.

{¶6} Mrs. Dobbins told police and later testified she took photos of herself with her own phone after the May 18 incident. On May 21, she showed the photos to her mother-in-law in an attempt to prove to her husband's family that he hurt her.

{¶7} Events came to a head on June 4, 2012. Appellant attended a graduation ceremony and while he was gone, Mrs. Dobbins moved out of the residence. When appellant returned, he found the house empty and called police. No one was arrested that evening. The next day, appellant's parents came over to the house for the 3-year-old's birthday. On the pretext of going to McDonald's, Mrs. Dobbins put the three children in her car and drove off, followed by appellant and his parents. Mrs. Dobbins drove to the Crisis Center and was directed to the domestic violence shelter. During her stay at the shelter, Mrs. Dobbins was urged to contact police about the May 18 incident.

{¶8} A number of witnesses testified on appellant's behalf. Two friends of appellant's spoke to Mrs. Dobbins about why she wanted to end the marriage; they testified she never told them about any physical violence. Appellant's sister and brother-in-law testified that Mrs. Dobbins had asked to meet with them privately in late March or early April, 2011, and told them she wanted a divorce. We note appellant's sister testified, "The first thing I asked her was has [appellant] ever hit her or the kids,"

and Mrs. Dobbins said no. Appellant's brother-in-law also testified as a photography expert and opined that the photos presented by Mrs. Dobbins had been altered.

{¶9} Appellant testified on his own behalf. In reference to the May 18 incident, he stated he had the iPhone, not his daughter, and Mrs. Dobbins tried to grab it from him. She kept pulling on his arm and hand but he did not let go; she let go and fell back, sitting down on a small bed beside the couch. He denied leaping over the couch, grabbing her, pushing her down, getting on top of her, or tearing her sweater. After the incident appellant's friend called on the phone and Mrs. Dobbins told him she wanted a "quickie divorce." Appellant stated Mrs. Dobbins was upset with him that night because he had questioned her earlier about $242,000 she had spent.

{¶10} Appellant was charged with one count of domestic violence pursuant to R.C. 2919.25(A), a misdemeanor of the first degree. Appellant entered a plea of not guilty and waived his right to a trial by jury. The case proceeded to bench trial and appellant was found guilty as charged. The trial court sentenced appellant to a jail term of 180 days with 147 days suspended, to be served as 3 days in a domestic violence intervention program and 30 days on electronically monitored house arrest. Appellant was further ordered to have no contact with the victim and to pay a fine of $500 plus court costs.

{¶11} Appellant now appeals from the judgment entries of his conviction and sentence.

{¶12} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶13} "I.  THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

**ANALYSIS**

**I.**

{¶14} In his sole assignment of error, appellant contends the judgment of the trial court is against the manifest weight and sufficiency of the evidence.

{¶15} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.  *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.  The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶16} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the

credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶17} Appellant was convicted of one count of domestic violence pursuant to R.C. 2919.24(A), which states, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Appellant does not challenge appellee's evidence on any specific element of the offense; instead, his arguments are premised upon Mrs. Dobbins' credibility. It is axiomatic, however, that the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216. The trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. This case was tried to the court; in a bench trial, the court is presumed to know the law and properly apply it. *State v. Sarver*, 7th Dist. No. 05-CO-53, 2007-Ohio-601, ¶ 23.

{¶18} We have reviewed the record, including the trial transcript of the witnesses' testimony and the photos. Viewing this evidence in a light most favorable to appellee, we conclude that a reasonable person could have found beyond a reasonable doubt appellant committed the offense of domestic violence. We find, therefore, that appellee met its burden of production regarding each element of the crime of domestic

violence and, accordingly, there was sufficient evidence to support appellant's conviction. Although appellant's witnesses testified Mrs. Dobbins did not mention physical violence, she spoke with several of these witnesses before May 18, which she testified was the first incident of physical violence. As the trial court pointed out, the photos corroborate a physical incident, and even appellant's mother agreed she was shown at least one of the photos on May 21 (although she insisted it was not indicative of violence). The trier of fact was free to accept or reject any and all of the evidence offered by the appellant and assess the witnesses' credibility. We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial.

## CONCLUSION

{¶19} Appellant's sole assignment of error is overruled and the judgment of the Massillon Municipal Court is affirmed.

By: Delaney, J. and

Hoffman, P.J.

Farmer, J., concur.

HON. PATRICIA A. DELANEY

HON. WILLIAM B. HOFFMAN

HON. SHEILA G. FARMER